JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
MICROBAN PRODUCTS COMPANY,                :
                      Plaintiff,                          :   CIVIL ACTION NO. 14CV 0041
               -against-                            :
API INDUSTRIES, INC. d/b/a                 :   COMPLAINT
ALUF PLASTICS INC.,                        :   JURY TRIAL DEMANDED
                     Defendant.                          :
------------------------------------------------------------- X

Plaintiff Microban Products Company ("Microban") hereby files this complaint for goods sold and delivered, account stated, breach of contract, trademark infringement, false designation of origin, unfair competition, and trademark dilution against API Industries, Inc. d/b/a Aluf Plastics Inc. ("Aluf"):

**THE PARTIES**

1. Microban is a North Carolina corporation with its principle place of business at 11400 Vanstory Drive, Huntersville, NC 28078.

2. On information and belief, Aluf is a New Jersey corporation with its principal place of business at 2 Glenshaw Street, Orangeburg, NY 10962.

**JURISDICTION AND VENUE**

3. This action for trademark infringement, false designation of origin, unfair competition, and trademark dilution arises under the Trademark Act of 1946 Act, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), the statutory laws of the State of New York, and the common law.

1

4.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and 15 U.S.C. §§ 1116 and 1121.  This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

5.      This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and it is a dispute between a citizen of North Carolina and a citizen of New Jersey.

6.      This Court has personal jurisdiction over the Defendant because it resides and transacts business in the State of New York.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District.  Further, this action is based, in part, upon an agreement between the parties (described below), which provides that New York law shall govern and that each party submits to the jurisdiction of any federal or state court located in the Southern District of New York.

## FACTUAL BACKGROUND

### Microban's Trademarks And Business

7.      Microban is the owner or holder of certain federally registered trademarks and service marks, as well as various unregistered marks, in each case related to, among other things, the development, manufacture, and sale of proprietary antibacterial, antifungal, and antiviral chemical additives (the "Microban Compounds").  These Microban Compounds, when incorporated into polymeric, textile or other materials, imbue those materials with durable antimicrobial qualities.  Microban's trademarks include, but are not limited to, MICROBAN, and the following design mark (together, the "MICROBAN Marks"):



2

The MICROBAN Marks are valid and subsisting, unrevoked, uncanceled, and incontestable.

8. For more than 15 years, Microban has been using the MICROBAN Marks in connection with the development, manufacture, marketing, and sale of the Microban Compounds and related products and services.

9. Microban regularly enters into license agreements with third parties pursuant to which Microban grants exclusive or non-exclusive licenses to use the MICROBAN Marks as a co-brand in marketing and selling goods that incorporate the Microban Compounds.

10. These agreements also typically include minimum commitments by the customer/licensee. Often, these commitments take the form of a minimum purchase requirement, whereby the licensee agrees to purchase a certain amount of Microban Compounds in a given time period for use in the licensee's product.

11. In addition, pursuant to these license agreements, Microban provides a number of services, including (i) review of all claims relating to the Microban Compounds to ensure compliance with all applicable laws and regulations, and (ii) ongoing quality testing to ensure the relevant products are, in fact, demonstrating the claimed antimicrobial efficacy.

12. Microban has invested heavily in creating, maintaining, and promoting the goodwill associated with the MICROBAN Marks. It and its customers have spent millions of dollars advertising and promoting the Microban Compounds and the goods and services manufactured with the Microban Compounds that feature the MICROBAN Marks, both in the United States and abroad, and in a variety of media.

13. As a result of these extensive sales, advertising, and promotional efforts, and its dedication to providing goods and services of the highest quality, the MICROBAN Marks have earned valuable goodwill and are favorably recognized and relied upon by the companies in the

textile, building, foodservice, home goods, and healthcare industries, as well as by the consuming public, as indicating high quality antimicrobial goods and services originating from a single source: Microban. The MICROBAN Marks have become strong and distinctive source indicators, entitled to protection against unfair and infringing uses.

### The License And Supply Agreement With Aluf

14. Aluf manufactures industrial liners and other plastic products for commercial and consumer use, such as plastic trash bags.

15. On or around March 1, 2006, Microban, as Licensor, entered into a license and supply agreement with Aluf, as Licensee (the "License Agreement").[1] A true and correct copy of the License Agreement and its amendments are attached hereto as Exhibit A and will be referred to collectively as the "License Agreement," unless otherwise noted as the context may require. Under the License Agreement, Aluf was granted a "non-exclusive, non-transferable right and license to use the [Microban] Trademark as a co-brand in the marketing and sale of the Products" in Canada and the United States (the "Trademark License"). License Agreement § 2(a)(i).[2]

16. The Trademark License became exclusive pursuant to Section 2(a) of the First Amendment to the License Agreement, effective as of April 1, 2007.

17. The Trademark License was only valid "during the Term" of the License Agreement, which ended June 30, 2013, after having been extended in a series of amendments.

---

[1] Microban Canada Inc., a separate and distinct company with which Microban had an exclusive distribution agreement, was also a signatory to the License Agreement. However, in early 2011, Microban acquired Microban Canada Inc.'s interest in the License Agreement.

[2] The License Agreement defines "Products" as "garbage bags for retail, commercial, health care and food service applications . . . manufactured by Licensee and its Designated Suppliers . . . ." License Agreement § 4.

4

18. Aluf also agreed to purchase 75,000 lb. of a customized Microban Compound at a fixed price in "Agreement Years 1 through 3" and 100,000 lb. of the same in "Agreement Years 4 through 6" (the "Minimum Purchase Requirement"). License Agreement § 9(a) (as amended by the Third Amendment to the License Agreement). Section 9(a) of the License Agreement made clear that this "is a 'take or pay' obligation such that the 'pay' obligation shall require Licensee" to remit a discounted price as liquated damages if the Minimum Purchase Requirement has not been met. *Id.*

19. Pursuant to the License Agreement, Aluf provides Microban with the base resin to make the Microban Compounds, and Microban has that resin compounded with the relevant antimicrobial chemicals to make the finished Microban Compound. License Agreement § 9(b) (as amended by the Third Amendment to the License Agreement).

20. Prior to the expiration of the Trademark License, Aluf used the MICROBAN Marks in connection with the sale and promotion of Aluf's goods, including, but not limited to, using the MICROBAN Marks on Aluf's website, marketing materials, and product packaging For example, Aluf prominently displayed the MICROBAN Marks on its home webpage (www.alufplastics.com):



And when a visitor to the Aluf website clicked on the MICROBAN Marks above, he or she was directed to the following page:



This page, in turn, directed visitors to a FAQ webpage about "Microban® antimicrobial protection."

## The License And Supply Agreement Ends

21.     As the termination date of the License Agreement loomed, Aluf had not purchased the minimum amount required by the License Agreement. Thus, on May 31, 2013, and after negotiations between the parties due to Aluf's failure to purchase the required minimum amount, Aluf placed orders for a total of 100,000 lb. of Microban Compounds.

22.     These Microban Compounds were manufactured in four batches during June and July of 2013. Each batch was invoiced when it was picked up by Aluf from Microban's compounding facility.

23.     On June 30, 2013, the License Agreement terminated in accordance with its terms, and consequently, the Trademark License expired as well.

24. By July 31, 2013, all 100,000 lb.[3] of the Microban Compounds had been manufactured and picked up by Aluf from Microban's compounding facility.

25. The total amount invoiced was $800,876. True and correct copies of the invoices are attached hereto as Exhibit B.

26. At no point did Aluf object to the quality, quantity, or otherwise as to the conformity of the Microban Compounds that it received.

### Aluf Refuses To Pay And Continues To Use The MICROBAN Marks

27. Aluf has refused to pay Microban for the goods delivered, except for one $50,000 payment. As such, as of the commencement of this action, Aluf owes Microban a total of $750,876, not including late fees and interest, for the Microban Compounds in its possession.

28. Furthermore, as of the commencement of this action, Aluf has continued to use the MICROBAN Marks on Aluf's website, and, upon information and belief, in its marketing materials, and product packaging, *in exactly the same way* as it did while the Trademark License was in effect.

29. Microban has demanded its past due payments from Aluf, but Aluf has refused to pay.

30. Microban has further demanded that Aluf cease and desist from the unauthorized use of the MICORBAN Marks. In fact, Aluf has effectively admitted, in writing, that the Trademark License expired, yet it continues to use the MICROBAN Marks.

31. Upon information and belief, Aluf is refusing to pay in order to wrongfully compel Microban to extend the Trademark License with no additional compensation.

---

[3] Because of the amount of resins provided by Aluf, and the size of the relevant packaging containers for the Microban Compounds, the total actually produced was 100,109.5 lb.

32. Despite the expiration of the Trademark License, and in violation of the License Agreement and United States and New York trademark laws, Aluf used and continues to use the MICROBAN Marks in connection with the sale and promotion of Aluf's goods, including, but not limited to, using the MICROBAN Marks on Aluf's website, marketing materials, and product packaging.

33. Aluf's use of the MICROBAN Marks prevents Microban and its affiliates from granting a new exclusive trademark license to any third party in respect of trash liners or trash bags.

34. Because Microban will no longer be reviewing and pre-approving Aluf's use of the MICROBAN Marks as part of its marketing support program (see Section 6 of Exhibit A to the License Agreement), Aluf's actions are likely to mislead consumers into believing that Microban approved of Aluf's ongoing use of the MICROBAN Marks in the marketing and sale of Aluf's goods.

35. Likewise, because the License Agreement is expired, Microban no longer may be able to ensure that Aluf's trash bags demonstrate the antimicrobial efficacy that Aluf claims (see Section 5 of Exhibit A to the License Agreement), as it did as part of its "quality assurance" program. As a result, Aluf's use of the MICROBAN Marks will mistakenly signal to consumers that Microban continues to vouch for the quality of the antimicrobial properties in Aluf's trash bags. There are circumstances where that could be inappropriate, such as when Microban Compounds are not properly stored, or if the product is held and not sold until after the expiration date passes.

36. Furthermore, Aluf's ongoing use of the MICROBAN Marks could mislead consumers into believing (i) that Microban and Aluf are affiliated in ways they are not (e.g.,

parent/subsidiary, etc.); (ii) that Microban is responsible for producing Microban's premium antimicrobial solution; or (iii) that Microban is a manufacturer of trash bags, and in particular, Aluf's trash bags.

37. In addition to causing consumer confusion, Aluf's actions are likely to divert and appropriate the goodwill created by Microban in the MICROBAN Marks.

38. Moreover, because Microban will no longer be reviewing Aluf's claims about the Microban Compounds to ensure regulatory compliance, it is possible that Aluf will make claims that are not permitted under applicable laws and regulations. If this were to happen, not only would Aluf be subject to penalty, but Microban could face allegations and claims from the applicable regulatory agency, and also could suffer damage to its reputation from any negative publicity that might surround any such enforcement action or similar proceeding.

39. Lastly, Aluf's actions in refusing to pay for the goods it ordered and received in order to retroactively negotiate an extension of the Trademark License, while continuing to use the MICROBAN Marks without authorization, constitute bad faith and willful trademark infringement and unfair competition.

**COUNT ONE**

**GOODS SOLD AND DELIVERED**
**(N.Y. U.C.C. § 2-709)**

40. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41. Between June 21, 2013 and July 30, 2013, Plaintiff sold to Defendant, and Defendant took delivery of, the Microban Compounds at the following agreed prices:

| Invoice No. | Delivery Date | Price |
|---|---|---|
| INV023607 | 6/21/2013 | $312,000.00 |
| INV023612 | 6/24/2013 | $58,944.00 |
| INV023725 | 7/29/2013 | $297,932.00 |
| INV023737 | 7/30/2013 | $132,000.00 |
| | TOTAL: | **$800,876.00** |

42. Defendant accepted and retained the goods sold and delivered to it without objection.

43. Plaintiff has demanded that Defendant remit payment in full.

44. As of the commencement of this action, Defendant has paid only $50,000.00 for the goods delivered.

45. Defendant has not paid the balance due of $750,876.00, exclusive of late fees and interest, for the goods delivered to and accepted by it, which, despite due demand, remains due and payable.

46. By virtue of the foregoing, Plaintiff is entitled to judgment against Defendant in the amount of $750,876.00, exclusive of late fees and interest, for goods sold and delivered.

## COUNT TWO

### ACCOUNT STATED

47. Plaintiff repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

48. Between June 21, 2013 and July 30, 2013, an account was stated by Plaintiff in the amount of $800,876.00.

49. The account was delivered to, accepted, and retained by Defendant without objection.

50. As of the commencement of this action, Defendant has paid only $50,000.00 for the goods delivered.

51. Defendant has not paid the balance due of $750,876.00, exclusive of late fees and interest, for the goods delivered to and accepted by it, which, despite due demand, remains due and payable.

52. Plaintiff is entitled to judgment in the amount claimed on the basis of an account stated, plus interest thereon.

## COUNT THREE

### BREACH OF CONTRACT

53. Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

54. Plaintiff has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the License Agreement.

55. Defendant had an obligation under the License Agreement to purchase 100,000 lb. of the Microban Compounds by June 30, 2013.

56. The Microban Compounds were delivered to, accepted, and retained by Defendant without objection.

57. As of the commencement of this action, Defendant has paid only $50,000.00 for the goods delivered.

58. Defendant has not paid the balance due of $750,876.00, exclusive of late fees and interest, for the goods delivered to and accepted by it, which, despite due demand, remains due and payable.

59. Plaintiff is entitled to judgment in the amount claimed on the basis of an account stated, plus interest thereon.

## COUNT FOUR

### TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

60. Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

61. Plaintiff has a valid mark that is entitled to protection under the Lanham Act.

62. Defendant used and continues to use the MICROBAN Marks in connection with the sale and promotion of Defendant's goods, including, but not limited to, using the MICROBAN Marks on Defendant's website, marketing materials, and product packaging.

63. Defendant's use of the MICROBAN Marks is likely to mislead or deceive an appreciable number of ordinarily prudent purchasers as to the source, affiliation, or approval of Defendant's goods, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

64. Defendant's use of the MICROBAN Marks further prevents Plaintiff and its affiliates from granting a new exclusive trademark license to any third party in respect of trash liners or trash bags.

65. Plaintiff has not authorized, licensed, or given permission to Defendant to use the MICROBAN Marks.

66. Defendant's conduct has been intentional and willful, constituting an exceptional case pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

67. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

68. As a result of Defendant's activities, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT FIVE

### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

69. Plaintiff repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

70. Plaintiff has a valid mark that is entitled to protection under the Lanham Act.

71. Defendant used and continues to use the MICROBAN Marks in connection with the sale and promotion of Defendant's goods, including, but not limited to, using the MICROBAN Marks on Defendant's website, marketing materials, and product packaging.

72. Defendant's use of the MICROBAN Marks is likely to mislead or deceive an appreciable number of ordinarily prudent purchasers as to the source, affiliation, or approval of Defendant's goods, in violation Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

73. Defendant's use of the MICROBAN Marks further prevents Plaintiff and its affiliates from granting a new exclusive trademark license to any third party in respect of trash liners or trash bags.

74. Plaintiff has not authorized, licensed, or given permission to Defendant to use the MICROBAN Marks.

75. Defendant's conduct has been intentional and willful, constituting an exceptional case pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

76. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

77. As a result of Defendant's activities, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT SIX

### TRADEMARK DILUTION
### (N.Y. GEN. BUS. LAW § 360-*l*)

78. Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

79. Plaintiff has a valid mark that is entitled to protection under New York law.

80. By virtue of Plaintiff's extensive use and promotion of the MICROBAN Marks, the MICROBAN Marks have become distinctive among consumers and the trade, and serve as a designation of origin and symbol of the vast goodwill that that has been established for its high-quality antimicrobial properties.

81. Defendant used and continues to use the MICROBAN Marks in connection with the sale and promotion of Defendant's goods, including, but not limited to, using the MICROBAN Marks on Defendant's website, marketing materials, and product packaging.

82. Defendant's use of the MICROBAN Marks dilutes and is likely to dilute the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services, in violation of N.Y. Gen. Bus. Law § 360-*l*.

83. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

84. As a result of Defendant's activities, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT SEVEN

### COMMON LAW TRADEMARK INFRINGEMENT

85.   Plaintiff repeats and realleges paragraphs 1 through 84 as if fully set forth herein.

86.   Plaintiff has a valid mark that is entitled to protection under New York law.

87.   Defendant used and continues to use the MICROBAN Marks in connection with the sale and promotion of Defendant's goods, including, but not limited to, using the MICROBAN Marks on Defendant's website, marketing materials, and product packaging.

88.   Defendant's use of the MICROBAN Marks is likely to mislead or deceive an appreciable number of ordinarily prudent purchasers as to the source, affiliation, or approval of Defendant's goods, in violation of New York common law.

89.   Defendant's use of the MICROBAN Marks further prevents Plaintiff and its affiliates from granting a new exclusive trademark license to any third party in respect of trash liners or trash bags.

90.   Plaintiff has not authorized, licensed, or given permission to Defendant to use the MICROBAN Marks.

91.   Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

92.   As a result of Defendant's activities, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT EIGHT

### COMMON LAW UNFAIR COMPETITION

93.   Plaintiff repeats and realleges paragraphs 1 through 92 as if fully set forth herein.

94. Plaintiff has a valid mark that is entitled to protection under New York law.

95. Defendant used and continues to use the MICROBAN Marks in connection with the sale and promotion of Defendant's goods, including, but not limited to, using the MICROBAN Marks on Defendant's website, marketing materials, and product packaging.

96. Defendant's use of the MICROBAN Marks is likely to mislead or deceive an appreciable number of ordinarily prudent purchasers as to the source, affiliation, or approval of Defendant's goods, in violation of New York common law.

97. Defendant's use of the MICROBAN Marks further prevents Plaintiff and its affiliates from granting a new exclusive trademark license to any third party in respect of trash liners or trash bags.

98. Defendant's conduct has been intentional and willful, constituting bad faith.

99. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

100. As a result of Defendant's activities, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT NINE

### BREACH OF CONTRACT

101. Plaintiff repeats and realleges paragraphs 1 through 100 as if fully set forth herein.

102. Plaintiff has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the License Agreement.

103. Defendant breached the License Agreement by continuing to use the MICROBAN Marks past the expiration of the Trademark License.

104. Defendant's use of the MICROBAN Marks prevents Plaintiff and its affiliates from granting a new exclusive trademark license to any third party in respect of trash liners or trash bags.

105. As a result of Defendant's breach, Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered as follows:

1. That judgment be entered in favor of Plaintiff against Defendant in an amount of $750,876.00, exclusive of late fees, interests, and costs, to be determined upon submission should judgment in Plaintiff's favor be granted.

2. That Defendant, its officers, agents, employees, and all persons in active concert with it be preliminarily and permanently enjoined from using the MICROBAN Marks in connection with the sale and promotion of Aluf's goods, including, but not limited to, using the MICROBAN Marks on Aluf's website, marketing materials, and product packaging.

3. That Defendant, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendant has complied with Paragraph 2 of this Prayer for Relief.

4. That Defendant account for and pay over to Plaintiff profits realized by Defendant by reason of Defendant's unlawful acts herein alleged and, that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

5. That Plaintiff be awarded its costs, expenses, and reasonable attorneys' fees.

6. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

Plaintiff requests a jury trial.

DATED: New York, New York
January 6, 2014

HOLWELL SHUSTER & GOLDBERG LLP

By: _____

Daniel P. Goldberg
Zachary A. Kerner
125 Broad Street, 39th Floor
New York, NY 10004
(646) 837-5151
dgoldberg@hsgllp.com

*Counsel for Plaintiff Microban Products Company*