UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                               :

MICROBAN PRODUCTS CO.,        :
                               :
             Plaintiff,     :
                               :
              v.            :
                               :
API INDUSTRIES, INC., d/b/a ALUF  :
PLASTICS, INC.,             :
                               :
             Defendant. :
                               :
------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __July 7, 2014__

14 Civ. 41 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

By Opinion and Order dated May 8, 2014, the Court granted Plaintiff
Microban's motion for summary judgment.[1]  The Court also awarded Plaintiff
attorneys' fees and costs as the prevailing party under the Lanham Act, 15
U.S.C. § 1117(a), having found that Defendant Aluf had not only willfully
infringed upon Plaintiff's marks, but had also demonstrated bad faith in doing
so.  *Microban Products Co.* v. *API Indus., Inc.*, No. 14 Civ. 41 (KPF), 2014 WL
1856471, at *23-24 (S.D.N.Y. May 8, 2014) (finding bad faith and willful
infringement, and awarding attorneys' fees under 15 U.S.C. § 1117(a)).

The Court directed Plaintiff to submit, no later than May 30, 2014, a fee
application to the Court, including a sworn declaration providing each

---

[1]    Familiarity with the facts and legal analysis set forth in the Court's May 8 Opinion and
Order is assumed for the purposes of this Opinion.  Any terms defined in that Opinion
and Order are incorporated by reference herein.

attorney's background, experience, and billing rate at the time the work was performed, as well as copies of the attorneys' time sheets. *Microban*, 2014 WL 1856471, at *24. Plaintiff did so (Dkt. #36), and Defendant's opposition papers were filed on June 12, 2014 (Dkt. #38). Plaintiff submitted a letter in reply on June 18, 2014 (Dkt. #39), and a further letter on June 30, 2014 (Dkt. #40). For the reasons set forth in the remainder of this Opinion, the Court awards Plaintiff attorneys' fees and costs in the amount of $157,036.58.

## DISCUSSION

### A.    Applicable Law

The Court has already awarded Microban attorneys' fees and costs; it must now determine the precise amount to award. The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley* v. *Eckerhart,* 461 U.S. 424, 437 (1983). When analyzing whether the requested fees are "appropriate," the "starting point" is "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea* v. *Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates a "'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008))).

A reasonable hourly rate is what "a reasonable, paying client would be willing to pay," and varies by practice area and location. *Arbor Hill,* 522 F.3d at 184, 192. This determination "'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee

2

applicant's counsel,'" and may "'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Townsend* v. *Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko* v. *Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)). Lastly, when determining whether an excessive amount of time was expended on a matter, the Court may consider the nature and quality of the work submitted by counsel, as well as the degree of counsel's success. *Kirsch* v. *Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *see also Hensley*, 461 U.S. at 436.

## B.   Calculation of the Lodestar Rate

### 1.   Hourly Rates of the HSG Timekeepers

Microban seeks fees for the work performed, and costs incurred, by its Manhattan-based counsel, Holwell Shuster & Goldberg LLP ("HSG"), in the amount of $159,557.58.[2] This sum represents the fees incurred by two attorneys[3] — Avi Israeli and Zachary Kerner — and two paralegals — Tamika Parker and Brittany Dobson — from November 2013 to May 2014. (Israeli Decl. ¶ 10). During this time, HSG drafted the complaint; moved for a

---

[2]   Plaintiff's counsel originally requested $160,187.58 (Dkt. #36), but amended that figure by June 30, 2014 letter to $159,557.58 (Dkt. #40), in order to correct certain errors in their initial submission.

[3]   Daniel Goldberg, a member of HSG, did not bill any time for his work on the case. Though he recorded a few hours in January 2014, the fees associated with that time were ultimately subtracted from Microban's bill. (Declaration of Avi Israeli ("Israeli Decl.") ¶ 12 ("[P]er an agreement with Microban, Mr. Goldberg did not submit time entries at all except for the month of January, which amounts were subject to a full courtesy discount and deducted from the invoice.")). In fact, Attachment 2 to the Israeli Declaration indicates that Goldberg billed 7.6 hours in January 2014, for a total of $5,890. (*See* Israeli Decl. Att. 2 at 10 (applying a courtesy discount for Goldberg's time of $5,890)). Microban has not sought, and the Court will not award, fees related to Goldberg's time.

3

temporary restraining order, which was ultimately denied; and moved for summary judgment, which was granted in all respects.

The HSG timekeepers' qualifications are as follows:  Israeli is a member at HSG, a 2004 law school graduate, and a specialist in complex commercial contractual disputes and related business torts; Israeli's hourly rate is $550. (Israeli Decl. ¶¶ 6, 10).  Kerner is an associate at HSG, a 2009 law school graduate, and a specialist in complex commercial litigation; Kerner's hourly rate was $355 from November to December 2013, and $405 from January to May 2014.  (*Id.* at ¶¶ 8, 10).  Parker, a senior paralegal, bills at the rate of $195 per hour, while Dobson, a junior paralegal, billed at the rate of $150 per hour from November to December 2013, and at the rate of $175 per hour from January to May 2014.  (*Id.* at ¶ 10; Dkt. #40).  Microban's submission details the relevant biographical and experiential information for attorneys Israeli and Kerner, but provides no information for paralegals Parker and Dobson, beyond their descriptions as "junior" and "senior."

The hourly rates for Israeli and Kerner, while certainly at the high end of the spectrum for attorneys of their experience within this District, are nonetheless comparable to what other courts in this District have awarded in similarly complex cases involving intellectual property disputes.  *See, e.g., OZ Mgmt. LP* v. *Ozdeal Inv. Consultants, Inc.*, No. 09 Civ. 8665 (JGK) (FM), 2010 WL 5538552, at *3-4 (S.D.N.Y. Dec. 6, 2010), *rep. and rec. adopted*, No. 09 Civ. 8665 (JGK), 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011) (approving hourly rates of $657 for senior partner, and $391.50, $382.50 and $355.50 for "mid-level"

4

associates in intellectual property case); *Therapy Prods., Inc.* v. *Bissoon,* No. 07 Civ. 8696 (DLC) (THK), 2010 WL 2404317, at *5 (S.D.N.Y. Mar. 31, 2010), *rep. and rec. adopted sub nom Erchonia Corp.* v. *Bissoon*, No. 07 Civ. 8696 (DLC), 2010 WL 2541235 (S.D.N.Y. June 15, 2010) (approving hourly rate of $430 for fourth-year associate in New York specializing in intellectual property); *Stevens* v. *Aeonian Press, Inc.,* No. 00 Civ. 6330 (JSM), 2002 WL 31387224, at *5 (S.D.N.Y. Oct. 23, 2002) (approving, in a copyright case, hourly rates of $460 for partners and, on average, $284 for associates at a large New York City law firm); *Yurman Designs, Inc.* v. *PAJ, Inc.,* 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (approving hourly rates of $520.69 for a partner and $278.50 for an associate at a mid-sized intellectual property law firm).  Given these decisions, issued several (indeed, up to 14) years ago by other courts within this District, and given "the fact that, in general, fees and expenses have risen in the interim," the Court finds these rates to be reasonable.  *Stevens*, 2002 WL 31387224, at *5; *see also G.B. ex rel. N.B.* v. *Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 432 (S.D.N.Y. 2012) ("There is no doubt that attorney's rates in this district have increased during the past nine to fourteen years[.]").  Israeli has also averred that these rates are in line with the prevailing market rates in this area (*see* Israeli Decl. ¶11), and the Court's own experience, in addition to the relevant case law, confirms his statement.  Moreover, in light of the complexity of the issues in this case, Microban's complete success in litigation, and the high quality of HSG's work, the Court finds that the requested hourly rates for Israeli and Kerner are reasonable.

The hourly rates for Parker and Dobson, however, exceed those typically awarded in this District to paralegals, particularly in light of the absence of background information regarding Parker's or Dobson's credentials and experience.  Courts in this District have approved a wide range of paralegal rates, including rates of $251 per hour.  *Compare Lucky Brand Dungarees, Inc.* v. *Ally Apparel Resources, LLC*, No. 05 Civ. 6757 (LTS) (MHD), 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (approving hourly paralegal rates of $205, $220 and $235), *with In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 507 (S.D.N.Y. 2009) (reducing hourly paralegal rates to a maximum of $100 and finding that the requested rates — the highest of which was $355 — were "both shocking and unconscionable").  That being said, there is "ample" support for the proposition that $150 per hour is a reasonable rate for paralegals in this District.  *Hnot* v. *Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008) (collecting cases).

In general, courts award fees above that amount where the paralegal's credentials are well-established; if they are not, courts typically reduce the hourly rate.  *See Yea Kim* v. *167 Nail Plaza, Inc.,* No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876 at *9 (S.D.N.Y. Jan. 12, 2009) ("[B]ecause we have been given no information whatsoever as to [the paralegals'] experience and expertise, we will instead award an hourly rate of $50." (internal citation omitted)); *Suchodolski Assocs., Inc.* v. *Cardell Fin. Corp.*, Nos. 03 Civ. 4148, 04 Civ. 5732, 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) ("Where the moving party fails to provide information on the attorneys' and paralegals'

backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested." (internal citation omitted)); *see also Canada Dry Delaware Valley Bottling Co.* v. *Hornell Brewing Co., Inc.*, No. 11 Civ. 4308 (PGG), 2013 WL 6171660, at *3 (S.D.N.Y. Nov. 25, 2013) (collecting cases, and reducing paralegal billing rates to $125 per hour); *Tlacoapa* v. *Carregal*, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (same).  Because Plaintiff's counsel has failed to provide any relevant background information in support of the requested paralegal fees, the Court will reduce Parker's hourly rate to $150 per hour, and Dobson's hourly rate to $125 per hour.

### 2.    Hours Expended by HSG

The next step in the Court's analysis is to determine whether the hours expended by HSG were reasonable.  In support of its fee application, Plaintiff has submitted contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children* v. *Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). According to these records, HSG billed Microban for 355.7 attorney hours and 56.6 paralegal hours from November 2013 to May 2014.  Aluf responds that, absent a hearing at which the fees can be contested, Microban should be limited to $60,000 in attorneys' fees and costs.  (Def. Opp. 6).

Aluf raises a number of objections to the number of hours billed by Plaintiff's counsel, arising from its central contention that the hours billed, and rates charged, were "excessive."  (Def. Opp. 1).  Aluf's objections are without merit.  First, Aluf decries HSG's rates as unreasonable and protests that

Israeli's declaration is insufficient to establish that HSG's fees are in line with the prevailing market rates in this area.  (*Id.*).  The Court has already found the HSG rates to be reasonable, and where they were not, the Court has reduced them appropriately.  Moreover, an attorney's affidavit, in conjunction with the Court's own knowledge of attorney billing rates in the area and survey of the relevant case law, is sufficient to establish whether a fee is reasonable.  *See Townsend*, 679 F.3d at 59; *G.B. ex rel. N.B.*, 894 F. Supp. 2d at 427.  This is precisely what the Court has done here.

Second, Aluf questions whether the fees have actually been paid by Microban, or whether there was a "courtesy discount" applied to Microban's invoices.  (Def. Opp. 2).  Microban has already indicated that a courtesy discount was applied, since Goldberg, a named partner at HSG, worked on this matter free of charge.  *See* n.3, *supra*.  Moreover, Aluf fails to cite any case in support of its suggestion that attorneys' fees under the Lanham Act may only be awarded to the extent actually paid.  To be sure, this requirement exists in other limited contexts, and it can be relevant to a court's determination of a reasonable fee, but it is not a requirement in this setting.  *See, e.g.*, *F.H. Krear & Co.* v. *Nineteen Named Trustees*, 810 F.2d 1250, 1269 (2d Cir. 1987) ("under a contract calling for 'reimbursement' for attorney's fees … a party is not entitled to an award exceeding the amount he has actually paid his attorney" (collecting cases)); *see also Bleecker Charles Co.* v. *350 Bleecker St. Apt. Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002) ("negotiation and payment of fees by

sophisticated clients are solid evidence of their reasonableness in the market").
The Court thus rejects this argument.

Third, Aluf argues that because three time entries were "block-billed," the
fee total should be reduced by 25% across the board.  (Def. Opp. 2).  It is
certainly true that vague and block-billed time records are generally
insufficient to substantiate a party's claimed expenditure of time.  *See Thai-Lao
Lignite (Thailand) Co., Ltd.* v. *Gov't of Lao People's Dem. Repub.*, No. 10 Civ.
5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012)
(collecting cases).  However, counsel are not required to "record in great detail
how each minute of [their] time was expended," but need only "identify the
general subject matter of [their] time expenditures."  *Hensley*, 461 U.S. at 437
n.12.  Thus, "'multiple entries comply with the Second Circuit's requirement of
specificity,' because such entries are consistent with the *Carey* dictate that
entries 'specify the date, hours expended, and nature of the work done.'"
*Meriwether* v. *Coughlin*, 727 F. Supp. 823, 827 & n.5 (S.D.N.Y. 1989) (citing
*Carey,* 711 F.2d at 1148); *see also Sylvester* v. *City of New York*, No. 03 Civ.
8760 (FM), 2006 WL 3230152, at *6 (S.D.N.Y. Nov. 8, 2006) (block-billed
entries "conform to what a reasonable client compensating her attorneys on an
hourly basis might expect them to delineate in periodic invoices seeking the
payment of fees").

The Court has reviewed the three time entries cited by Aluf and finds
each to be sufficiently clear.  (*See* Def. Opp. 2).  More importantly, the amount
billed in each instance is not unreasonable in light of the work specified in

those time entries, such as drafting and revising complicated, lengthy memoranda of law or preparing for a temporary restraining order hearing. Each of these tasks could take eight to nine hours, even if they were not also billed alongside internal correspondence and discussion, as they are here. Because the HSG attorneys have identified "the date, the hours expended, and the nature of the work done," *Carey,* 711 F.2d at 1148, their time records are sufficient.  *See Hnot*, 2008 WL 1166309, at *6 (noting that while block billing was not the best practice, where time records specified the date, hours expended, and work done, and the hours billed were not independently unreasonable, block billing was acceptable); *see also Barbour* v. *City of White Plains*, No. 07 Civ. 3014 (RPP), 2013 WL 5526234, at *8 (S.D.N.Y. Oct. 7, 2013) (approving block billing where "there [wa]s no evidence that the hours billed were independently unreasonable or that the tasks are compensable at different rates"); *G.B. ex rel. N.B.*, 894 F. Supp. 2d at 441 ("Defendant has identified no entries where the hours billed are unreasonable, or where block billing has combined activities compensable at different rates.  Therefore, the Court does not find any reduction warranted.").

Fourth, Aluf contends that HSG improperly "double-teamed" its time entries by involving two lawyers in the same tasks.  (Def. Opp. 3).  In particular, Aluf points to the fact that Israeli asked that Kerner be copied on e-mail correspondence between HSG and Aluf's counsel.  (*Id.*).  The Court does not share Aluf's concerns.  It is perfectly reasonable — and in fact, commonplace — for two attorneys, such as a partner and an associate at the

10

same law firm, to be copied on e-mail correspondence with opposing counsel. More fundamentally, collaboration and review between and among attorneys is "part of the normal practice of any responsible lawyer working in collaboration with another." *Hnot*, 2008 WL 1166309, at *7. The time entries in question are reasonable.

Fifth, Aluf objects to the amount of time HSG spent drafting the complaint and researching various legal issues. (Def. Opp. 3). Aluf argues that a sophisticated firm such as HSG should have precedents in its "computer database," which, Aluf argues, would obviate the need to conduct substantial research into these issues. (*Id.* at 5). The Court disagrees. The complaint was detailed, appended several exhibits, and alleged a number of complex copyright, tort, and contract claims. (*See* Dkt. #1). Moreover, many of the legal issues implicated by this action were novel, or at the very least complicated, and necessitated a great deal of research by the parties, as well as the Court. *See Microban*, 2014 WL 1856471, at *9-12. It was both reasonable and, quite frankly, necessary for Plaintiff's counsel to conduct the extensive research it did prior and subsequent to the filing of this action.

Sixth, Aluf contends that the amount of attorneys' fees, while not currently disproportional to the amount at issue in this action, would certainly have become disproportional had the case actually proceeded through discovery. (Def. Opp. 3-4). But the case did not proceed through discovery. In fact, Plaintiff's counsel worked quite diligently to expedite the proceedings in an attempt to minimize costs. Moreover, "courts have consistently held that an

11

attorneys' fee award should not be reduced to achieve proportionality with the amount of the recovery." *Ayres* v. *127 Rest. Corp.,* No. 96 Civ. 1255 (DC), 1999 WL 328348, at *2 (S.D.N.Y. May 21, 1999) (*citing City of Riverside* v. *Rivera,* 477 U.S. 561, 575 (1986); *Quaratino* v. *Tiffany & Co.,* 166 F.3d 422, 426 (2d Cir. 1999)); *see also Kassim* v. *City of Schenectady,* 415 F.3d 246, 252 (2d Cir. 2005) ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." (collecting cases)).

Finally, Aluf objects to the number of hours expended by HSG paralegals in monitoring, and recording, the various iterations of Aluf's website over the course of the litigation.  (Def. Opp. 4).  The Court has reviewed the time records at issue and finds that they are reasonable.  This case was initiated in no small part because of the contents of Aluf's website.  More importantly, the Court relied in its Opinion on the fact that Aluf's website had not changed during the course of the litigation.  *Microban*, 2014 WL 1856471, at *6-7.  Moreover, Aluf's concerns regarding the amount billed for paralegal work are mitigated, at least in part, by the Court's reduction of the approved hourly rates.

Overall, the Court finds the number of hours expended by HSG in litigating this action to be reasonable.  As the Court's Opinion makes clear, the numerous issues in this case are particularly complicated.  *See generally Microban*, 2014 WL 1856471, at *6-19.  Although the case has been pending for approximately six months, the record is substantial and unusually well-developed for a complex civil dispute of such recent vintage.  More importantly,

12

the record reveals a conscious and concerted effort on behalf of Plaintiff to minimize costs and proceed expeditiously.  As but a few examples, Plaintiff moved for a temporary restraining order in January 2014; when that motion was denied, Plaintiff forwent motion practice seeking a preliminary injunction, and a potentially costly discovery schedule, instead electing to proceed directly to summary judgment and a permanent injunction only weeks later.  *See Microban,* 2014 WL 1856471, at *4.  Plaintiff also forwent statutory damages, which would have necessitated substantial discovery, as well as additional briefing and argument.  HSG's billing records indicate that Plaintiff's counsel were judicious in the time they expended; Goldberg's *gratis* legal work, as well as the fact that the majority of the time expended on this action was by an associate, bear out this fact.  Lastly, the briefing submitted by Plaintiff's counsel was of a very high quality, as were counsel's statements in court proceedings, and Plaintiff was ultimately successful on each claim it pursued.  On this basis, the Court finds that the hours expended by HSG in connection with this matter are reasonable.

## C.      Imposition of Attorneys' Fees and Costs

Plaintiff is entitled to attorneys' fees and costs in the amount of

$157,036.58.  In reaching this figure, the Court applied the lodestar method as

follows:

| Timekeeper | Rate | Hours | Reasonable Fee |
|---|---|---|---|
| Avi Israeli | $550 | 57.6 | $31,680 |
| Zachary Kerner | $355 (Nov.-Dec. 2013) | 96.1 | $34,115.50 |
|  | $405 (Jan.-April 2014) | 202 | $81,810 |
| Tamika Parker | $150 | 7.3 | $1,095 |
| Brittany Dobson | $125 | 49.3 | $6,162.50 |

Lodestar Total: $154,863

Costs: $2,173.58

TOTAL AMOUNT: $157,036.58

### CONCLUSION

For the reasons set forth herein, and further to the Court's May 8, 2014

Opinion and Order, it is hereby ORDERED that Plaintiff is awarded attorneys'

fees and costs in the amount of $157,036.58.

SO ORDERED.

Dated: July 7, 2014
         New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge